UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NICOLE SWICEGOOD, | ) | 1:08-cv-1870 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1972 and previously worked as an alarm dispatcher and real estate agent. (Administrative Record ("AR") 25, 97.) Plaintiff stopped working after she was no longer able to walk up and down stairs because of problems with her right knee. (AR 26.)

Plaintiff remained insured for DIB through June 30, 2006 (the "date last insured"). (AR 8.) On June 1, 2006, Plaintiff filed an application for DIB, alleging disability beginning on December 1, 2005, due to knee and neck problems. (AR 83-85, 96.)

On September 25, 2006, L.V. Bobba, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC"). (AR 178-82.) Dr. Bobba opined that Plaintiff could (1) occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. (AR 179.) Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 180.) Plaintiff's ability to reach was limited, but she had no visual, communicative, or environmental limitations. (AR 180-81.)

On September 29, 2006, A.R. Garcia, M.D., a state agency psychiatric consultant, completed a psychiatric review technique form ("PRTF"), finding that Plaintiff had no medically determinable mental impairment. (AR 183.)

On November 21, 2007, Frank Fine, D.C., M.D., performed a consultative physical examination of Plaintiff. (AR 263-66.) Dr. Fine opined as follows:

> With regards to work restrictions as it relates to her neck she needs to avoid sustained positions of upward and downward gaze. No repetitive rotation movements of her neck. She cannot push, pull, or lift more than ten pound[s] at or above shoulder height without aggravating neck pain and neck tension type headaches. Regarding her right hand she needs to avoid repetitive gripping, grasping, torquing, pushing, pulling, or lifting more than 10 pounds with the right upper extremity. Avoid fine fingering maneuvers of the right hand as well. Regarding her right lower extremity she cannot walk over uneven ground, climb stairs or ladders. She cannot repetitively kneel or squat on the right knee. She cannot prolong stand [sic] for more than 15 to 20 minutes and needs a five to ten minute interval rest. Regarding her lower back she should avoid repetitive bending and stooping and lifting more than ten pounds from the waist up. It is my opinion these are all permanent restrictions for her.

(AR 266.)

On that same day, Dr. Fine also completed a form on which he assessed Plaintiff's physical ability to do work-related activities. (AR 259-62.) Dr. Fine opined that Plaintiff could occasionally lift and carry only up to 10 pounds, and sit, stand, and walk for a total of one hour in an eight-hour workday. (AR 259-60.) Plaintiff could continuously use her feet but only occasionally use her hands for simple grasping and fine manipulation. (AR 260.) Plaintiff could frequently balance and occasionally climb, stoop, crouch, kneel, and crawl. (AR 261.) Plaintiff could also occasionally reach, handle, feel, and push or pull. (AR 261.) Finally, Plaintiff had no environmental limitations. (AR 262.)

On November 26, 2007, Amos Hobby, Jr., Ph.D., a psychotherapist, completed a PRTF and mental impairment questionnaire. (AR 267-85.) On the PRTF, Dr. Hobby opined that Plaintiff's mental impairments met the listed impairments for affective and anxiety-related disorders in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 and 12.06. (AR 267.) In assessing Plaintiff's functional limitations, Dr. Hobby opined that Plaintiff's restriction of activities of daily living was mild, she had mild difficulties in maintaining social functioning, and she had no difficulties in maintaining concentration, persistence, or pace. Plaintiff had no episodes of decompensation of extended duration. (AR 277.) Dr. Hobby noted that Plaintiff "expresses anxiety and stress and depression but they are not severely debilitating." (AR 278.) In assessing Plaintiff's functional limitations on the questionnaire, Dr. Hobby opined that Plaintiff's restriction of activities of daily living was none or mild, her difficulties in maintaining social functioning were none or mild, and her difficulties in maintaining concentration, persistence, or pace were moderate. Plaintiff did not experience episodes of decompensation. (AR 283.) Plaintiff would be "seriously limited" in maintaining regularly attendance, but Plaintiff's impairments would cause her to be absent from work one day a month. (AR 282, 285.)

On November 29, 2007, Dr. Hobby diagnosed Plaintiff with (1) adjustment disorder with mixed anxiety and depression and (2) pain disorder related to psychological and general medical

conditions. (AR 287.) Dr. Hobby opined that "Plaintiff would benefit from psychotherapy but her financial situation would preclude this." (AR 287.)

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 43-46, 50-54.)

On January 8, 2008, ALJ Sandra K. Rogers held a hearing in which Plaintiff testified that she could only walk for 20 feet, stand for ten minutes, and lift ten pounds without problem. (AR 27, 29.) Plaintiff described the pain in her right knee as a "stabbing" pain. (AR 27.) Plaintiff could not lift anything "very heavy" because of the crushed disc in her neck that occurred in 2000 or 2001. (AR 27, 28.) Further, Plaintiff was unable to grip with her right hand because carpal tunnel syndrome in that hand caused numbness. (AR 31.) Plaintiff sought treatment from Central Valley Pain Management once a month for her knee, neck, and lower back pain. (AR 28-29.) Plaintiff's neck problems affected her ability to perform household chores such as vacuuming and mopping, and her pain caused stress. (AR 29-30.) Plaintiff did not seek treatment for her stress, however, because she was unable to afford it, although she had received treatment at the Modesto Psychiatric Center. (AR 32.)

A vocational expert testified that Plaintiff's past work as an alarm dispatcher was sedentary, and her past work as a real estate agent was light.[2] (AR 33.) A hypothetical person of the same age, education, and work experience as Plaintiff could perform Plaintiff's past relevant work as an alarm dispatcher and a real estate agent if that person could perform at least light work with no forceful gripping, grasping, or torquing with the right hand. (AR 34.) If such a person could only perform sedentary work, that person would still be able to perform Plaintiff's past work as an alarm

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

4

dispatcher. (AR 34.) Mild restrictions of activities of daily living and mild difficulties in maintaining social functioning would preclude the performance of Plaintiff's past work as a real estate agent but not her work as an alarm dispatcher. (AR 34.) Further, a manipulative limitation of reaching in all directions would preclude Plaintiff's past work. (AR 36.)

On April 25, 2008, the ALJ issued a decision finding Plaintiff not disabled from December 1, 2005, through the date last insured. (AR 6-21.) Specifically, the ALJ found that, through the date last insured, Plaintiff (1) had not engaged in substantial, gainful activity from the alleged onset date of December 1, 2005; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform her past relevant work as an alarm dispatcher. (AR 10-21.) In assessing Plaintiff's RFC, the ALJ found that Plaintiff had mild difficulties in social functioning and could perform sedentary work without forceful gripping, grasping, or torquing with the dominant right hand. (AR 15.)

Plaintiff sought review of this decision before the Appeals Council. (AR 5.) On October 10, 2008, the Appeals Council denied review. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On December 4, 2008, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in determining the severity of her mental impairment and in discounting her credibility.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial

evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.

*Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work.[3] *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A.   The ALJ's Evaluation of Plaintiff's Mental Impairment

The ALJ found that, through the date last insured, Plaintiff "had the following severe impairments: disc abnormality of the cervical spine, status post right knee surgery, right carpal tunnel syndrome, and obesity." (AR 10.) Plaintiff maintains that the ALJ erred in finding that Plaintiff's "medically determinable mental impairment does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." (AR 14.) In doing so, Plaintiff asserts that the ALJ improperly discounted Dr. Hobby's opinion without providing specific and legitimate reasons supported by substantial evidence in the record.

#### 1.   Legal Standard

With regard to a determination at the Second Step, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Thus, "'[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687. The court noted that "[s]tep two . . . is 'a de minimis screening device [used] to dispose of groundless claims' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Id.* (citation omitted).

In determining whether a plaintiff's mental impairment is severe, ALJs are to determine the degree of limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a claimant's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities.[4] *See* 20 C.F.R. § 404.1520a(c)-(d).

**2.   Analysis**

Plaintiff's argument ignores the function of the Second Step as a gatekeeping mechanism to dispose of groundless claims. Once a claimant prevails at the Second Step, by achieving a finding of some severe impairment, regardless of which condition is found to be severe, the Commissioner proceeds with the sequential evaluation, considering at each step all other alleged impairments and symptoms that may impact the claimant's ability to work. *See* 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the

---

[4] Basic work activities include: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers, and usual work situations; and (3) dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b).

individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.").

Here, Plaintiff prevailed at the Second Step. Thus, the question becomes whether the ALJ properly considered the functional limitations of all medically determinable impairments at the remaining steps. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (recognizing that, if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis). The ALJ fully considered all of Plaintiff's impairments, including her depression and anxiety, and accommodated in the RFC finding the limitations that were supported by the record. There was no error in the analysis at the Second Step.

Here, the ALJ found mild limitations in Plaintiff's activities of daily living and social functioning, no limitation in her concentration, persistence, or pace, and no episodes of decompensation. (AR 14.) Therefore, the ALJ properly concluded that Plaintiff did not have a severe mental impairment. *See* 20 C.F.R. § 404.1520a(d)(1).

Plaintiff contends, however, that the ALJ erred in giving little weight to Dr. Hobby's opinion. In determining that Plaintiff's mental impairment was not severe, the ALJ relied on the opinion of Dr. Garcia, the state agency psychiatric consultant who opined that Plaintiff had no medically determinable mental impairment. (AR 14, 183.)

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion

is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ provided specific and legitimate reasons for discounting Dr. Hobby's opinion. First, the ALJ noted that Dr. Hobby's opinion was internally inconsistent: "Dr. Hobby stated that [Plaintiff] had no limitations of concentration, persistence, or pace; but also stated that [Plaintiff] had moderate limitations of concentration, persistence, or pace." (AR 13.) Dr. Hobby opined that Plaintiff "had a seriously limited ability to maintain attendance, but then stated that she would only miss one day of work a month." (AR 13, 282, 285.) *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports). An ALJ may properly resolve conflicts and ambiguities in the medical evidence, as the ALJ did here. *See, e.g.*, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Second, Plaintiff denied on several occasions that she suffered from depression. (AR 10, 13-14, 19-20.) In any event, Dr. Hobby opined that Plaintiff's anxiety, stress, and depression were not severely debilitating. (AR 278.) In sum, the ALJ gave specific and legitimate reasons, supported by the record, for discounting Dr. Hobby's opinion.

Plaintiff further contends that the ALJ erred in discounting Dr. Fine's opinion. The ALJ legitimately gave little weight to Dr. Fine's opinion because "[t]he purpose of the examination appears to have been to support [Plaintiff's] testimony rather than to obtain relief of symptoms." (AR 20.) *See Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996) (per curiam) (ALJ may permissibly question doctor's credibility because doctor's opinion letter had been solicited by claimant's counsel). The ALJ also found that Dr. Fine's opinion was not supported by objective medical findings that

10

Plaintiff had normal reflexes, motor strength, and sensation. (AR 20.) *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Finally, the ALJ discounted Dr. Fine's opinion regarding Plaintiff's limitations because "[i]t appears that these limitations are based on [Plaintiff's] statements that she could only stand or walk for 15 to 20 minutes." (AR 20.) *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ properly may discount physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes claimant's self-reporting is not credible). The ALJ gave specific and legitimate reasons, supported by the record, for discounting Dr. Fine's opinion. Accordingly, the ALJ's findings are supported by substantial evidence and are legally correct.

**B.      The ALJ's Consideration of Plaintiff's Credibility**

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (AR 20.) Plaintiff maintains that the ALJ erred in doing so.

**1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for

lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray*, 554 F.3d at 1226-27; 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2.     Analysis**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. (AR 20.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

As an initial matter, Plaintiff contends that the ALJ improperly discredited her testimony because of her failure to obtain physical therapy for her knee and treatment for her mental health. (AR 18, 19.) Plaintiff testified that she could not afford such treatment. (AR 18, 19, 32.) Because the Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it," the ALJ improperly discounted Plaintiff's testimony on the basis of her treatment regimen for pain. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Smolen*, 80 F.3d at 1284; *cf. Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984))).

Nonetheless, the fact that this reason for discrediting Plaintiff's testimony should properly be discounted does not render the ALJ's credibility determination invalid, as long as that

12

determination is supported by substantial evidence in the record overall. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility findings are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if record did not support one of ALJ's stated reasons for disbelieving claimant's testimony, error was harmless).

Here, although in discounting Plaintiff's credibility the ALJ improperly relied upon Plaintiff's failure to seek treatment, the ALJ's error was harmless because substantial evidence otherwise supports the ALJ's credibility determination. First, in discounting Plaintiff's credibility, the ALJ found inconsistencies in the record. Inconsistent statements are matters appropriately considered in evaluating a claimant's subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, internal contradictions in the testimony, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas*, 278 F.3d at 958-59. The ALJ may consider whether Plaintiff's testimony is believable or not. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ noted that Dr. Fine found in November 2007 that Plaintiff was able to reach within 14 inches of the floor, had no muscle spasms in the back, and had intact sensation, reflexes, and motor strength. Such findings did not support Plaintiff's alleged inability to stand for more than ten minutes or walk more than 20 feet. Further, the ALJ found that Dr. Fine's finding that Plaintiff had intact motor strength did not support Plaintiff's claimed inability to sit for more than one hour in an eight-hour workday. (AR 19). Inconsistency between a claimant's testimony and the objective medical evidence can be a clear and convincing reason to discredit the claimant's testimony, as "a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective

findings." *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). In addition, the ALJ's observation that at the hearing Plaintiff had no difficulty walking into the hearing room was also a clear and convincing reason to discount her testimony. *See Thomas*, 278 F.3d at 960 (determining that ALJ's consideration of claimant's demeanor at hearing where "she seemed to engage in considerable histrionic exaggeration" was clear and convincing reason to reject claimant's testimony); *Nyman*, 779 F.2d at 531 ("The inclusion of the ALJ's personal observations does not render the decision improper.").

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *Cf. Batson*, 359 F.3d at 1196. Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Nicole Swicegood.

IT IS SO ORDERED.

**Dated:   September 23, 2010**               /s/ Sheila K. Oberto
                                      UNITED STATES MAGISTRATE JUDGE